# United States District Court
## Northern District of Alabama
### Southern Division



FILED

02 DEC -5 AM 10: 47

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| John Mack, | ] | |
| | ] | |
|     Plaintiff(s), | ] | |
| | ] | |
|     vs. | ] | CV-02-N-2276-S |
| | ] | |
| Alabama Department of Youth | ] | |
| Services, et al., | ] | |
| | ] | |
|     Defendant(s). | ] | |

**ENTERED**

DEC 0 5 2002

## Memorandum of Opinion

### I.    Introduction.

This case involves claims arising out of the termination of the plaintiff's employment with the defendant, the Alabama Department of Youth Services ("DYS"). Plaintiff John Mack ("Mr. Mack") alleges that he was discharged from his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. Mr. Mack also brings claims under 42 U.S.C. § 1983 against DYS and defendant Walter Wood ("Mr. Wood"), the Executive Director of DYS,[1] for violation of his Fourteenth Amendment right to equal protection. Presently before the court is the defendants' motion for summary judgment, filed on October 15, 2002, [Doc. # 9], as well as the defendants' motion to strike, filed on November 5, 2002, [Doc. # 19]. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion to strike is moot, and the motion for summary judgment will be treated as a motion to dismiss and as such will be granted in part and denied in part.

---

[1] Mr. Wood is sued in his individual capacity only.



## II.     Facts.[2]

Mr. Mack was employed by DYS as a Security Guard at its Chalkville facility from December 1987, until his termination on August 23, 2001. DYS is an agency of the State of Alabama that operates juvenile correctional facilities, including the Chalkville facility, throughout the state of Alabama. The Chalkville facility is a correctional facility used for incarcerating and confining minor females who have been adjudicated as delinquent or as children in need of supervision. Mr. Mack's duties as a Security Guard included monitoring and observing the movement of the detainees at the facility, physically restraining unmanageable detainees, and pursuing detainees who attempted to escape from the facility. In using force against detainees, Mr. Mack was to use only the minimum amount of force necessary to bring the situation under control.

In the summer of 2001, Mr. Mack claims that he and numerous black, male employees of the Chalkville facility were suspended from their jobs due to allegations of sexual misconduct.[3] Mr. Mack claims that white employees were accused of similar

---

[2]This case comes before the court in an unusual procedural posture. The motion for summary judgment was filed before the parties engaged in any discovery; indeed, the defendants have yet to answer the complaint. Because the parties have not engaged in any discovery, Mr. Mack was unable to counter the defendants' assertions of fact. Therefore, perhaps unwisely, he simply admitted each and every factual allegation asserted by the defendants, stating that without discovery, he is unable to either admit or dispute any of the defendants' facts. The court is reluctant to hold the plaintiff to an admission of each of the defendants' factual allegations. Under these circumstances, the court is inclined to take as true the allegations of the complaint, with the defendants' statement of facts to supplement the allegations. Indeed, as will be explained *infra*, the court intends to treat the motion for summary judgment as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). This seems more efficient than allowing the parties to engage in discovery before ruling on the issues before the court, particularly as the applicability of the qualified immunity defense must be decided "as soon as possible." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002). Therefore, the following are the facts for purposes of the instant motion; they may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3]The defendants do not agree that Mr. Mack was suspended in the summer of 2001. However, the court will assume for purposes of this motion that Mr. Mack was, in fact, suspended.

misconduct but were not suspended. Upon receipt of complaints of sexual misconduct involving Mr. Mack, Mr. Wood determined a disciplinary hearing was necessary to ascertain whether the allegations warranted Mr. Mack's termination. Mr. Mack claims he was not provided with the names of his accusers or the dates of the alleged incidents; however, the defendants claim that Mr. Mack was given notice of the time and place of his disciplinary hearing as well as the names of his accusers, the dates of the alleged incidents, and the nature of the accusations against him. Upon conclusion of the hearing, Mr. Wood determined that the evidence was insufficient to warrant disciplinary action against Mr. Mack based on the sexual allegations. However, Mr. Wood ordered Mr. Mack to undergo additional training at that time.

Subsequently, on August 10, 2001, a second disciplinary hearing was held concerning allegations levied against Mr. Mack. That hearing involved complaints about the level of force Mr. Mack used in subduing several detainees involved in an escape attempt on May 19, 2001. Mr. Mack allegedly struck three detainees about the head and face, forcibly dragged a detainee by her shirt, and forcibly dragged a detainee by the hair. Prior to the hearing, the defendants claim they gave Mr. Mack notice of the time and place of the hearing, as well as the names of his accusers, the dates of the alleged incidents, and the nature of the accusations against him. As a result of the hearing, Mr. Wood terminated Mr. Mack from his employment with DYS. Mr. Mack claims that white, female employees who also responded to the escape attempt in question used force equal to or in excess of that used by Mr. Mack, but were not terminated for their actions.

3

On February 12, 2002, Mr. Mack filed a charge of discrimination with the EEOC, alleging that DYS had discriminated against him on the basis of his race and sex. The EEOC issued a notice of right to sue on August 30, 2002, and Mr. Mack filed the instant lawsuit on September 13, 2002. [Doc. #1, Compl.] Mr. Mack raises two theories of recovery: he alleges that DYS discriminated against him because of his race and sex in violation of Title VII; and he claims under 42 U.S.C. § 1983 that DYS and Mr. Wood deprived him of his constitutional right to equal protection of the laws.

**III.   Standard.**

As explained *supra*, *see* note 2, the instant motion for summary judgment comes at an unusual stage in the proceedings: the parties have not engaged in any discovery, nor have the defendants yet answered the complaint. While an early motion for summary judgment will not always be inappropriate, the court is of the opinion that ordinarily, a motion for summary judgment filed in the early stages of litigation is not the most suitable vehicle for weeding out non-meritorious claims. For instance, defense counsel in the instant case, apparently overcome by enthusiasm for his cause, chose to forego its remedy under Federal Rule of Civil Procedure 12(b)(6), and instead filed the instant motion for summary judgment. In response, counsel for the plaintiff, having no factual basis to deny any of the facts asserted by the defendants, chose rather foolishly to admit all the facts proffered by the defendants. This turn of events has created a bit of a procedural muss, which the court, with little aid from counsel, must now attempt to put straight. It seems to the court that the simplest and most efficient way to handle this situation is to treat the motion for summary judgment as a 12(b)(6) motion to dismiss, which is what defense counsel should have filed

4

in the first instance. If the court can treat a 12(b)(6) motion to dismiss as a motion for summary judgment when the parties submit evidence outside the pleadings, *see* Fed. R. Civ. P. 12(b), the court sees no reason why it cannot convert the instant motion for summary judgment into a motion to dismiss. To that end, the court will ignore all the so-called "evidence" and matters outside the pleadings submitted by the parties and rule on the sufficiency of the complaint alone.

Federal Rule of Civil Procedure 12(b)(6) allows dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). In evaluating the sufficiency of a complaint, the court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff. *Beck*, 144 F.3d at 735. The defendant at this stage bears the "very high burden" of showing that the plaintiff cannot prove any set of facts that would entitle him to relief. *Id.* at 736.

**IV.    Discussion.**

      **A.    Motion to strike.**

The defendants have moved to strike the evidentiary submission of the plaintiff, submitted in response to the defendants' motion for summary judgment. Because the court has decided to treat the motion for summary judgment as a motion to dismiss and to therefore ignore all the evidentiary submissions of the parties, the court finds that the motion to strike is moot.

5

**B.    The Title VII claims.**

DYS argues that Mr. Mack's Title VII claims are due to be dismissed because Mr.

Mack "has failed to set forth a *prima facie* case of discrimination under Title VII." [Doc. #

10, at 19.] However, the Supreme Court recently held that "an employment discrimination

complaint need not include [specific facts establishing a *prima facie* case of discrimination]

and instead must contain only 'a short and plain statement of the claim showing that the

pleader is entitled to relief.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002)

(quoting Fed. R. Civ. P. 8(a)(2)). The Court noted that "[t]he *prima facie* case under

*McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."

*Swierkiewicz*, 534 U.S. at 510. Indeed, as in this case, "[b]efore discovery has unearthed

relevant facts and evidence, it may be difficult to define the precise formulation of the

required *prima facie* case in a particular case." *Id.* at 512. Because Mr. Mack's complaint

complies with Rule 8(a), and because the parties have had no opportunity to engage in any

discovery relevant to the manifold issues attendant to a *prima facie* case of discrimination

under Title VII, the court is of the opinion that DYS's motion to dismiss with respect to Mr.

Mack's Title VII claims is due to be denied without prejudice to DYS's right to raise these

issues in a motion for summary judgment made after the parties have engaged in some

discovery.[4]

---

[4]Moreover, counsel for the defendants may wish to consider the expenditure of greater efforts to keep himself better abreast of the developing decisional law in areas of the law in which he intends to practice.

**C.    The § 1983 claims against DYS.**

DYS argues that the § 1983 claims brought against it for violation of Mr. Mack's constitutional right to equal protection are due to be dismissed because it enjoys sovereign immunity from suit under the Eleventh Amendment. Insofar as he seeks monetary relief from DYS, Mr. Mack agrees that his § 1983 claims are due to be dismissed. [Doc. # 14, at 6 ("[T]he plaintiff agrees with [the defendant's] argument as to the claims for monetary relief and will dismiss the section 1983 claims accordingly. The plaintiff is clearly entitled to seek injunctive relief under section 1983.").] Mr. Mack maintains that the Eleventh Amendment poses no bar to his claims for injunctive relief under § 1983. The court disagrees.

"The Eleventh Amendment bars suit in federal court against state agencies." *Hufford v. Rodgers*, 912 F.2d 1338, 1341 (11th Cir. 1990). *See also United States v. State of Ala.*, 791 F.2d 1450, 1457 (11th Cir. 1986) ("In general, the Eleventh Amendment bars suits by citizens against a state."). This immunity extends to suits for injunctive relief as well as monetary relief, unless one of the exceptions to the Eleventh Amendment applies. *See Cory v. White*, 457 U.S. 85, 90 (1982); *Ala. v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Cate v. Oldham*, 707 F.2d 1176, 1181-82 (11th Cir. 1983). The exceptions to Eleventh Amendment immunity are implicated where a state consents to suit in federal court, and where Congress, under certain circumstances, abrogates a state's sovereign immunity. *United States v. State of Ala.*, 791 F.2d at 1457.

There can be no doubt that DYS is an agency of the state of Alabama and is thus entitled to share in the state's Eleventh Amendment immunity. *See* Ala. Code § 44-1-20 (1991) ("There is hereby created and established a department of the state to be known as

7

the department of youth services."); *Ala. Youth Servs. Bd. v. Ellis*, 350 So. 2d 405 (Ala. 1977);
*cf. Jones v. Phyfer*, 761 F.2d 642 (11th Cir. 1985). Indeed, Mr. Mack admits as much in the
complaint. [Doc. #1, Compl., at 2 ("[DYS] is an agency of the state of Alabama.").] Thus,
unless one of the exceptions applies, DYS is entitled to sovereign immunity from Mr. Mack's
§ 1983 claims for injunctive relief. DYS has not consented to suit, and the Supreme Court has
held that Congress did not intend § 1983 to abrogate a state's Eleventh Amendment
immunity. *Ky. v. Graham*, 473 U.S. 159, 170 n.17 (1985). *See also Farrell v. Woodham*, No.
2:01-CV-417-FTM-29DNF, 2002 U.S. Dist. Lexis 11818, at *7 (M.D. Fla. May 29, 2002).
Because neither of the exceptions to Eleventh Amendment immunity applies, DYS is entitled
to sovereign immunity from all claims brought against it under § 1983, and the motion to
dismiss as to those claims is due to be granted.[5]

### D.    The § 1983 claims against Mr. Wood.

Mr. Wood argues that he is entitled to the defense of qualified immunity with respect
to the § 1983 claims asserted against him. Under the qualified immunity defense, Mr. Wood
is immune from liability and from trial altogether if the complaint fails to state a violation of
a clearly established constitutional right of which a reasonable person would have known.
*Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995). For purposes of a motion to dismiss,
the court must take all the factual allegations in the complaint as true in order to discern

---

[5]Furthermore, even if the Eleventh Amendment did not apply to bar the § 1983 claims brought against DYS,
the claims are due to be dismissed in any event because the Supreme Court has held that states and state
agencies are not "persons" subject to liability under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).
*See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

8

whether Mr. Mack alleges that Mr. Wood violated a clearly established constitutional right. *See Wilson v. Strong*, 156 F.3d 1131, 1133 (11th Cir. 1988).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 122 S. Ct. 2508, 2513 (2002). If Mr. Wood participated in "constitutionally impermissible conduct, [he] may nevertheless be shielded from liability for civil damages if [his] actions did not violate 'clearly established'" law. *Hope*, 122 S. Ct. at 2515. The Eleventh Circuit engages in a two-part analysis to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

Mr. Wood asserts, and the court agrees, that he was acting within the scope of his discretionary authority in disciplining Mr. Mack, and the plaintiff does not dispute this assertion. Thus, the court's inquiry will focus on whether Mr. Mack has established that Mr. Wood's actions violated a clearly established constitutional right. To determine whether the constitutional right in question is "clearly established," the court must ask "whether the state of the law [at the time of the alleged constitutional violation] gave [Mr. Wood] fair warning that [his] alleged treatment of [Mr. Mack] was unconstitutional." *Hope*, 122 S. Ct. at 2516.

There can be no doubt that at the time Mr. Mack was disciplined and terminated, it was clearly established that intentional discrimination by a state actor in the workplace on

account of race violated the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., Lambert v. Fulton County, Ga.*, 253 F.3d 588, 597 (11th Cir. 2001). Moreover, the Fourteenth Amendment right to be free from gender discrimination by a government official was sufficiently well established that Mr. Wood should have known that to engage in such discrimination would violate Mr. Mack's right to be free of gender discrimination. *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995); *Nicholson v. Ga. Dep't of Human Res.*, 918 F.2d 145, 148 (11th Cir. 1990). *See Hope*, 122 S. Ct. at 2515 ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (internal quotation marks omitted). However, "[w]hile the general proposition that it is illegal to discriminate against a person on the basis of race [or sex] is clearly established, whether the defendant violated clearly established law depends on the particular facts of each case." *Brown v. Cochran*, 171 F.3d 1329, 1333 (11th Cir. 1999). *See also Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) ("If the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right."); *GJR Invs. Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.").

The court is of the opinion that the complaint fails to sufficiently establish that the particular facts of this case amount to a violation of the Equal Protection Clause.

10

Specifically, while Mr. Mack alleges that "upon information and belief," white and female employees who engaged in conduct similar to that engaged in by Mr. Mack were not disciplined to the extent that Mr. Mack was, he does not provide the name, or other identifying information, with respect to a single white or female employee similarly situated as he. Although discovery has not yet taken place, it should not be too much to ask of a plaintiff who wishes to sue a government official for actions undertaken pursuant to his discretionary authority to have some modicum of concrete evidence of a constitutional violation. Surely Mr. Mack knows the names, or other identifying characteristics, of one or more of these alleged white or female employees who he claims were treated better than him; yet he has not taken the opportunity in the complaint or in his response to the instant motion to produce the kind of specific allegations necessary to overcome a qualified immunity defense. *Cf. Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991) (holding the defense of qualified immunity did not bar plaintiff's action from proceeding beyond the pleading stage where the plaintiff listed in his complaint the names of seven similarly situated white employees who were treated more favorably than the plaintiff). Accordingly, Mr. Mack has failed to establish that Mr. Wood violated Mr. Mack's clearly established constitutional right to equal protection of the laws. Therefore, the motion to dismiss as to Mr. Mack's § 1983 claims against Mr. Wood is due to be granted.

### E.   The prayer for punitive damages.

DYS and Mr. Wood argue that any prayer for punitive damages "is due to be stricken" because, they argue, "[p]unitive damages are not recoverable against governmental entities or their officials." [Doc. #10, at 25.] The only claims for which Mr.

Mack seeks punitive damages are his § 1983 claims against Mr. Wood, which the court has already determined are due to be dismissed based on the defense of qualified immunity. Therefore, the motion to dismiss with respect to Mr. Mack's prayer for punitive damages is moot.

## V.   Conclusion.

In sum, the motion to strike is moot. Further, the motion for summary judgment will be treated as a motion to dismiss, and as such, it will be granted with respect to the § 1983 claims against DYS and Mr. Wood. The motion will be denied as to the Title VII claims against DYS. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 4th of December, 2002.

Edwin Nelson
United States District Judge

12